

**ORDERED in the Southern District of Florida on May 21, 2019.**

Erik P. Kimball, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                                                    Case No. 13-25698-EPK

**CORALEE EDWARDS,**                                                   Chapter 13

    Debtor.
_____/

ORDER GRANTING
<u>MOTION TO DEEM CURRENT SECURED OBLIGATION</u>

This matter came before the Court for hearing on February 11, 2019 upon the *Motion to Deem Current Secured Obligation to Creditor Wells Fargo Bank, N.A. (POC#7)* [ECF No. 139] (the "Motion") filed by Coralee Edwards (the "Debtor") and the initial response thereto [ECF No. 145] filed by Wells Fargo Bank, N.A. ("Wells Fargo"). After the February 11, 2019 hearing, at the Court's direction, Wells Fargo filed a supplemental response to the Motion at ECF No. 168 and the Debtor filed a reply to the supplemental response at ECF No. 170. Without Court authorization, Wells Fargo then filed a second supplemental response at ECF No. 171, responding to the Debtor's reply at ECF No. 170.

## Facts

In July 2013, with the assistance of counsel, the Debtor filed a voluntary chapter 13 petition.

Wells Fargo timely filed proof of claim number 7-2 in the total amount of $132,331.91. The claim is secured by a mortgage on the Debtor's principal residence. Wells Fargo's proof of claim reflects prepetition arrearages in the amount of $15,846.30 and ongoing mortgage payments in the amount of $1,045.03 per month. The Debtor did not file an objection to Wells Fargo's claim. As detailed below, the Debtor treated the claim through a confirmed chapter 13 plan. In July 2018, after five years without missing a plan payment, the Debtor satisfied all conditions of the confirmed plan. There is no dispute that the Debtor paid all prepetition arrearages owed to Wells Fargo. ECF Nos. 132 and 144. However, the Debtor and Wells Fargo dispute whether the Debtor is current with post-petition mortgage payments consistent with section[1] 1322(b)(5).

Prior to confirming a plan, the Debtor attempted to modify Wells Fargo's secured claim through the Court's mortgage modification mediation process. ECF Nos. 18 and 20. The Debtor's initial plan through the Debtor's fifth amended plan provided for adequate protection payments to Wells Fargo in the amount of $500.00 per month. ECF Nos. 11, 26, 37, 43, 62, and 74. In April 2014, nine months into the case, the Debtor and Wells Fargo failed to reach an agreement through the mortgage modification mediation. ECF No. 67.

In July 2014, the Debtor filed a sixth amended plan, electing for the first time to cure the prepetition arrearage owed to Wells Fargo and to maintain post-petition mortgage payments consistent with the original documents. ECF No. 80. The Debtor then filed a series of amended plans with the same treatment for Wells Fargo. ECF Nos. 85, 88, and 91.

---

[1] Unless otherwise noted, the word section or sections refers to the stated section or sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

In September 2014, the Debtor filed a tenth amended plan [ECF No. 91] (the "10AP"). The 10AP provided for cure of all prepetition arrearages and for post-petition mortgage payments to Wells Fargo in the amount of $500.00 for months 1 through 12 (to reflect the Debtor's previously paid adequate protection payments) and $1,181.29 for months 13 through 60, for a total amount of $62,701.92 in post-petition mortgage payments during the period covered by the 10AP.

Wells Fargo received notice of the 10AP and the hearing thereon, and did not object to its confirmation. After a hearing, on September 29, 2014, the Court confirmed the Debtor's 10AP. ECF No. 94.

In April 2015, the Debtor filed a motion to modify the 10AP. ECF No. 107. While Wells Fargo received notice of the motion to modify and the hearing thereon, ECF No. 109, the text of the motion to modify did not propose any change to the treatment of Wells Fargo's secured claim. In connection with the motion to modify, the Debtor filed five modified plans. ECF Nos. 106, 110, 111, 112, and 113. Each of these modified plans provided for maintenance of post-petition mortgage payments in the amount of $963.57 for months 1 through 22 and $1,092.14 for months 23 through 60, for a total amount of $62,699.86 in post-petition mortgage payments. This total amount is $2.06 less, overall, than the total amount presented in the 10AP. Wells Fargo received notice of each of these modified plans.

In early July 2015, after the hearing on the motion to modify, the Debtor filed a sixth modified plan [ECF No. 114] (the "6MP"), which provided for post-petition mortgage payments in the amount of $716.69 for months 1 through 22 and $1,092.14 for months 23 through 60, for a total amount of $57,268.50 in post-petition mortgage payments. This total amount is $5,433.42 less than the total amount presented in the 10AP. Wells Fargo received notice of the 6MP.

On July 20, 2015, the Court granted the Debtor's motion to modify and confirmed the 6MP.  ECF No. 115.  There is no dispute that Wells Fargo received notice of the motion to modify, the hearing thereon, each of the modified plans, including the 6MP, as well as the Court's order granting the Debtor's motion to modify and confirming the 6MP.  Wells Fargo did not object to the Debtor's motion to modify or to confirmation of the 6MP.  Wells Fargo did not appeal the Court's order confirming the 6MP.

On July 5, 2018, nearly four years after the Court confirmed the 6MP, the chapter 13 trustee filed the notice of plan completion and notice of final cure payment.  ECF Nos. 131 and 132.  Wells Fargo filed an objection to the trustee's notice of final cure payment, stating that the Debtor is not current on post-petition mortgage payments consistent with section 1322(b)(5).  ECF No. 144.  In that objection, Wells Fargo asserts that, as of March 15, 2018, the Debtor was delinquent $4,810.37 on post-petition mortgage payments.  It is unclear why this sum is a few hundred dollars smaller than the difference between the total provided in the 10AP and the total provided in the 6MP.  In any case, the amount now claimed unpaid by Wells Fargo is not in dispute.

On August 1, 2018, the Debtor received a discharge.  ECF No. 147.

During the course of the Debtor's plan, Wells Fargo filed five notices of mortgage payment change pursuant to Fed. R. Bankr. P. 3002.1.  Based on the parties' briefs, it does not appear that the mortgage payment changes reflected in those notices had any material impact on the dispute now before the Court.  Nonetheless, four of the notices of mortgage payment change were filed after the Court confirmed the 6MP.  The Debtor did not file motions to modify the 6MP in order to conform to the amounts provided in the notices of payment change.

In the Motion, among other things, the Debtor asks the Court to deem current the Debtor's post-petition mortgage obligations due to Wells Fargo as of July 2018, the month in

which the chapter 13 trustee made the final payment under the 6MP. The Debtor argues that Wells Fargo received notice of the motion to modify, the hearing thereon, each of the modified plans, including the 6MP, and the Court's order granting the motion to modify and confirming the 6MP. Because Wells Fargo failed to object to confirmation of the 6MP or appeal the Court's order confirming the 6MP, the Debtor argues that the 6MP is *res judicata* and that Wells Fargo is bound by the terms of the 6MP. The Debtor relies on section 1327(a) and *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).[2] The Debtor also claims that she was not required to file an objection to Wells Fargo's proof of claim prior to confirmation.

In response, Wells Fargo argues that the Debtor is not current with post-petition mortgage obligations consistent with section 1322(b)(5) and asks the Court to order that the post-petition delinquency of $4,810.37 is valid and enforceable against her. Wells Fargo argues that its timely filed proof of claim, which the Debtor never objected to, is prima facie evidence of the validity and amount of its allowed claim. Wells Fargo also argues that the 6MP violates section 1322(b)(2) by modifying its allowed claim secured by a mortgage on the Debtor's principal residence. Wells Fargo relies on *Universal Am. Mort. Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003).[3]

Before the February 11, 2019 hearing on the Motion, counsel who represented the Debtor through each and every step of this chapter 13 case, from filing the voluntary petition

---

[2] The Debtor also cites Fed. R. Bankr. P. 3015(g), which provides, in relevant part, that upon confirmation of a chapter 13 plan "any determination in the plan made under Rule 3012 about the amount of a secured claim is binding on the holder of the claim, even if the holder files a contrary proof of claim or the debtor schedules that claim, and regardless of whether an objection to the claim has been filed." Under Fed. R. Bankr. P. 3012, a debtor or other party in interest may seek an order valuing a secured claim under section 506(a). But the debtor did not request, by separate motion or in the 10AP or the 6MP themselves, to value the collateral securing the claim of Wells Fargo. Therefore, Fed. R. Bankr. P. 3015(g) is not applicable to the present matter.

[3] Wells Fargo also relies on *In re Hill*, 572 B.R. 793 (Bankr. N.D. Ga. 2017), which addresses interpretation of an ambiguity in a confirmed chapter 13 plan. *In re Hill* is neither binding on this Court nor applicable here as there is nothing ambiguous about the applicable plan in this case.

through confirmation of the 6MP and the filing of the present Motion, filed a motion to withdraw based on irreconcilable differences. The Court set the motion to withdraw for hearing on February 11, 2019 to be heard along with the Motion. Because the Debtor appeared at the February 11, 2019 hearing with new counsel, the Court permitted former counsel to withdraw, ECF No. 169, and new counsel to argue the Motion. When asked about the delinquency on post-petition mortgage payments resulting from the terms of the 6MP, former counsel stated that the relevant portion of the 6MP included a "scriveners error," meaning that certain of the payment amounts shown in the 6MP were unintentionally changed.

## Discussion

Section 1322(b) permits the debtor to include certain terms in a chapter 13 plan. Section 1322(b) provides, in relevant part, that a plan may:

> (2) modify the rights of holders of secured claims, *other than a claim secured only by a security interest in real property that is the debtor's principal residence*, . . .;
> . . .
> (5) notwithstanding paragraph (2) of this subsection, provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is due after the date on which the final payment under the plan is due[.]

(emphasis added). While section 1322(b)(5) permits a debtor to cure prepetition arrearages and maintain post-petition mortgage payments under a plan, section 1322(b)(2) prohibits any other modification of a homestead mortgagee's rights in the plan.

A homestead mortgagee's rights in a chapter 13 plan typically are determined by the timely filing of a proof of claim and the claims objection process. Pursuant to section 502(a), a timely filed proof of claim "is deemed allowed, unless a party in interest . . . objects[.]" Although section 502(a) does not provide a deadline for a party in interest to file an objection to a creditor's claim, such an objection must be filed prior to confirmation of the plan. *In re*

*Bateman*, 331 F.3d at 827 (citing *In re Justice Oaks II, Ltd.*, 898 F.2d 1544, 1553 (11th Cir. 1990); *In re Starling*, 251 B.R. 908, 909-10 (Bankr. S.D. Fla. 2000)). Pursuant to Fed. R. Bankr. P. 3001(f), a timely filed proof of claim "shall constitute prima facie evidence of the validity and amount of the claim." "A secured creditor who [timely] files a claim has a correct and lawful expectation that the validity and amount of its . . . claim, absent objection, is proven and binding upon the debtor[.]" *Hope v. Acorn Fin., Inc.*, 731 F.3d 1189, 1195 (11th Cir. 2013) (quoting *In re Hudson*, 260 B.R. 421, 431 (Bankr. W.D. Mich. 2001)).

Under section 1325(a)(1), the bankruptcy court shall confirm a chapter 13 plan if "the plan complies with the provisions of this chapter and with the applicable provisions of this title." Thus, section 1325(a)(1) incorporates the anti-modification provision of section 1322(b)(2) as well as the expectations provided by section 501(a) and Fed. R. Bankr. P. 3001(f).

The order confirming a chapter 13 plan is a final order subject to appeal. *Espinosa*, 559 U.S. at 269. Section 1327(a) describes the effect of confirmation: "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Section 1327(a) thus gives *res judicata* effect to a confirmed chapter 13 plan. Indeed, the binding effect of section 1327(a) goes beyond that of *res judicata*. As Collier on Bankruptcy explains:

> [T]he binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order, including whether the plan complies with sections 1322 and 1325 of the Bankruptcy Code. For example, a creditor may not after confirmation assert that the plan . . . is otherwise inconsistent with the Code in violation of section 1322(b)(11) or section 1325(a)(1).

8 Collier on Bankruptcy P 1327.02[1][c] (16th ed. 2019) (cited favorably by the Eleventh Circuit in *In re Bateman*, 331 F.3d at 829-30).

The Eleventh Circuit has previously examined the interplay between the anti-modification provision of section 1322(b)(2) and the binding effect of a confirmed plan under section 1327(a). *In re Bateman,* 331 F.3d 821. In *Bateman*, the Eleventh Circuit determined that section 1322(b)(2) prevails. But, in light of more recent Supreme Court precedent, that view does not stand.

In *Bateman*,[4] the Eleventh Circuit held that, pursuant to section 1327(a), "a secured creditor cannot collaterally attack a confirmed Chapter 13 plan, even though the plan conflicted with the mandatory provisions of the bankruptcy code, when the secured creditor failed to object to the plan's confirmation or appeal the confirmation." *Id.* at 822. Nevertheless, the Eleventh Circuit also held that "a secured creditor's [allowed] claim for mortgage arrearage survives the confirmed plan to the extent it is not satisfied in full by payments under the plan, or otherwise satisfied under the terms § 1325(a)(5), because to permit otherwise would deny the effect of 11 U.S.C. § 1322(b)(2), which, in effect, prohibits modifications of secured claims for mortgages on a debtor's principal residence." *Id*. While parties, including the debtor and secured creditors, are bound to the terms of a confirmed plan pursuant to section 1327(a), the Eleventh Circuit determined that a creditor's claim secured only by a security interest in real property that is the debtor's principal residence is

---

[4] The facts of *Bateman* are very similar to the facts of this case. They are summarized as follows: The debtor filed a voluntary chapter 13 petition. The creditor timely filed a proof of claim, providing for an amount of prepetition arrearages. The creditor's claim for prepetition arrearages was secured by a first mortgage on the debtor's principal residence. The debtor did not file an objection to the creditor's proof of claim prior to confirmation. Instead, the debtor filed a plan providing for an arrearage payment less than the amount provided by the creditor's allowed claim. The creditor did not object to confirmation of the plan. The bankruptcy court confirmed the plan. The creditor did not appeal the bankruptcy court's confirmation order. More than a year post-confirmation, the debtor filed a formal objection to the creditor's claim. In response, the creditor filed a motion to dismiss the chapter 13 case for the debtor's failure to comply with section 1325(a)(5) and section 1322(b)(2).

entitled to greater protection under the anti-modification provision of section 1322(b)(2).[5] *Id.* at 829-34 and n. 12.

Given the plain language of section 502(a) and Fed. R. Bankr. P. 3001(f), the Eleventh Circuit's ruling in *Bateman* regarding prepetition arrearages would apply equally to post-petition mortgage payments, especially considering that the only exceptions to the anti-modification provision of section 1322(b)(2), aside from the automatic stay provision of section 362(a) applicable to all bankruptcy cases regardless of chapter, are the cure and maintain provisions of sections 1322(b)(5) and 1322(c). *See Nobelman v. Am. Sav. Bank*, 508 U.S. 324, 330 (1993) (citing sections 362(a) and 1322(b)(5) as two instances in which the anti-modification provision of section 1322(b)(2) does not apply); *In re Sarkese*, 189 B.R. 531, 534 (Bankr. M.D. Fla. 1995) (following *Nobelman* and the enactment of the Bankruptcy Reform Act of 1994, "section 1322(c)(2) of the Bankruptcy Code carved out an[other] exception to subsection 1322(b)(2)."). But the Eleventh Circuit's determination in *Bateman* that the anti-modification provision of section 1322(b)(2) prevails over the binding effect of a confirmed plan under section 1327(a) is not consistent with the Supreme Court's subsequent decision in *Espinosa*.

In *Espinosa*, the debtor filed a chapter 13 plan proposing to discharge a portion of the debtor's federally-guaranteed student loan debt. 559 U.S. at 264. The debtor failed to commence an adversary proceeding and serve the creditor with a summons and complaint to determine the dischargeability of said student loan debt, as required by section 523(a)(8) and Fed. R. Bankr. P. 7001(6) and 7004(b)(3). *Id.* The creditor received actual notice of the plan.

---

[5] In *Bateman*, the Eleventh Circuit also ruled that a confirmed chapter 13 plan could not serve as a constructive objection to a claim where the debtor failed to file a formal objection to the claim prior to confirmation of the plan. *Bateman*, 331 F.3d at 828-29. The Eleventh Circuit ruled that the provision in the confirmed chapter 13 plan, which reduced the allowed claim, was not procedurally sufficient to substitute as a formal objection to the claim. *Id.* This portion of the Eleventh Circuit's decision in *Bateman* is not consistent with the analysis of the Supreme Court in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), discussed below, and thus is no longer binding.

*Id*. at 265. In response, the creditor filed a proof of claim for the full amount of the student loan debt. *Id*. However, the creditor did not object to the plan. *Id*. The bankruptcy court confirmed the plan. *Id*. The creditor did not appeal the confirmation order. *Id*. Four years later, the debtor satisfied the terms of the confirmed plan and received a discharge. *Id*. at 265-66. Nearly six years after discharge, the creditor filed a motion under Fed. R. Civ. P. 60(b)(4) seeking to set aside as void the bankruptcy court's confirmation order. *Id*. at 266. The creditor argued that its due process rights had been violated because the debtor did not commence an adversary proceeding and serve the creditor with a summons and complaint to determine the dischargeability of a portion of the student loan debt. *Id*.

The Supreme Court held that, while the debtor's failure to serve a summons and complaint deprived the creditor of a right granted by a procedural rule, the creditor's due process rights were not violated because the creditor received actual notice of the plan. *Id*. at 272. While noting that the bankruptcy court should not have confirmed a plan that discharged a portion of the student loan debt without first making the dischargeability determination required under section 523(a)(8), the Supreme Court nonetheless held that the confirmed plan "remains enforceable and binding on [the creditor] because [the creditor] had notice of the error and failed to object [to confirmation] or timely appeal [the bankruptcy court's confirmation order]." *Id*. at 275. *Espinosa* stands for the proposition that a confirmed chapter 13 plan is binding on all parties in interest, provided the debtor afforded such parties adequate notice, even if the plan violates the Bankruptcy Code and/or the Bankruptcy Rules.

The ruling in *Espinosa* confirms the Eleventh Circuit's determination in *Bateman* that, pursuant to section 1327(a), "a secured creditor cannot collaterally attack a confirmed Chapter 13 plan, even though the plan conflicted with the mandatory provisions of the bankruptcy code, when the secured creditor failed to object to the plan's confirmation or

appeal the confirmation." *Bateman*, 331 F.3d at 822.  However, the Supreme Court's analysis in *Espinosa* displaced the Eleventh Circuit's other ruling in *Bateman,* that the anti-modification provision of section 1322(b)(2) prevails over the binding effect of a confirmed plan under section 1327(a).

Leading commentators on chapter 13 law opine that the Supreme Court's decision in *Espinosa* should not be read narrowly:

> *Espinosa* is a robust reaffirmation that the effect of confirmation under § 1327(a) really means what the Code says: 'The provisions of a confirmed plan bind the debtor and each creditor . . . whether or not such creditor has objected to, has accepted, or has rejected the plan.' Although many circuit court decisions have gone astray in recent years, chipping away at the finality of confirmation orders in various contexts in Chapter 13 cases—sometimes confusing statutory and procedural rights with constitutional due process—in *Espinosa*, the Supreme Court brings us back to reality.

Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, §229.1, at ¶ 83, Sec. Rev. Oct. 8, 2010, www.Ch13online.com.  The Eleventh Circuit agreed, albeit in *dicta*, that "*Espinosa* . . . further solidifies the finality of a confirmed plan." *Fla. Dep't of Revenue v. Gonzalez (In re Gonzalez)*, 832 F.3d 1251, 1258 n.4 (11th Cir. 2016).

As described above, a homestead mortgagee's rights in a chapter 13 plan typically are determined by the timely filing of a proof of claim and the claims objection process.  The Eleventh Circuit has applied *Espinosa* in the claims objection context:  "[A]lthough the Debtor did not provide [the creditor] with 'perfect' service of every document that he was required to send to his creditor, [the creditor] was nonetheless provided with notice reasonably calculated under all the circumstances to apprise [the creditor] that its status as a secured creditor was being challenged." *Nationstar Mortg., LLC v. Iliceto (In re Iliceto)*, 706 Fed. Appx. 636, 642 (11th Cir. 2017) (citing *Espinosa* in support and explaining that "*Espinosa* controls our decision").  In *Iliceto*, the Eleventh Circuit explained that, while violations of a procedural rule and a statutory requirement occurred, "like in *Espinosa*, the

creditor could have sought reconsideration or appealed the adverse ruling on the Debtor's objection after it received the bankruptcy court's order to object to any violation of its due process rights." *Id*. at 643.

The Supreme Court's decision in *Espinosa* is binding on this Court and applicable to the present matter. Wells Fargo filed a proof of claim, secured only by an interest in real property that is the Debtor's principal residence, providing for prepetition arrearages and post-petition mortgage payments. The Debtor did not object to Wells Fargo's claim. While the Debtor's confirmed 6MP provides for the cure of all prepetition arrearages owed to Wells Fargo, it provides for post-petition mortgage payments in an aggregate amount less than the amount provided in Wells Fargo's allowed claim.[6] Wells Fargo did not object to confirmation of the 6MP. Wells Fargo did not appeal the Court's order confirming the 6MP. The Debtor satisfied all terms of the 6MP and received a discharge. Pursuant to section 1327(a) and consistent with *Espinosa*, Wells Fargo is bound by the terms of the 6MP, even though the 6MP violates the anti-modification provision of section 1322(b)(2). *In re Passavant*, 444 B.R. 378, 385 (Bankr. S.D. Ohio 2010) (relying on section 1327(a) and *Espinosa* in granting a motion to deem post-petition mortgage obligations current, "even if the banks were correct that the provisions of the Plan . . . violated the Code [*i.e.*, sections 1322(b)(2) and 1328(a)(1)]). Wells Fargo is deemed to have been paid all post-petition mortgage payments provided for in, first, the 10AP and, later, the 6MP. In other words, the post-petition delinquency of $4,810.37 is unenforceable against the Debtor. "Upon satisfaction of the plan and completion of the plan's terms, the debtor is discharged of his or her debts and, in theory, faces a future of solvency." *In re Bateman*, 331 F.3d at 826 (citing section 1328). The Debtor satisfied all

---

[6] For purposes of this analysis, it does not matter that the delinquency arose from the terms of a modified plan. Section 1329 permits a debtor to modify a plan after confirmation. Section 1329(b)(1) requires that a modified plan comply with sections 1322(b) and 1325(a).

conditions of the confirmed 6MP and already received a discharge.  The Debtor shall exit bankruptcy current, as of July 2018, on her post-petition mortgage payments.[7]

The Court also considered whether the actions of the Debtor and Wells Fargo would support modification of the Court's ruling on grounds of equity.  After the Court confirmed the 6MP, Wells Fargo filed four separate notices of mortgage payment change, consistent with Fed. R. Bankr. P. 3002.1.  On the one hand, it is unclear whether the Debtor had an affirmative duty to further modify the confirmed plan in response to each of the notices of payment change.[8]  Had the Debtor done so, the error in the 6MP may have been brought to light.  This did not happen.  On the other hand, Wells Fargo filed four notices of payment change that indicated monthly payments at odds with the 6MP and what it was actually receiving, and did nothing about it.  Wells Fargo slept on its rights to object to the 6MP, to appeal the Court's confirmation order, or to ask the Court to compel modification of the 6MP to match the notices of payment change.  Even if the rules of equity apply in this instance, neither party would gain from their application.  In the end, the Court finds no reason to diverge from the terms of the 6MP as confirmed.

## Conclusion

For the forgoing reasons, the Court ORDERS and ADJUDGES as follows:

1. The Motion [ECF No. 139] is GRANTED, as provided herein.

---

[7] So-called "long-term" mortgage obligations that arose after the Debtor finished making payments under the 6MP are not affected by the discharge or this order.  *See* section 1328(a)(1).  Only the Debtor's "short-term" mortgage obligations, those obligations covered by the life of the 6MP, including the delinquency of $4,810.37, are discharged.

[8] The Advisory Committee Note to Fed. R. Bankr. P. 3002.1 states, in relevant part:
> In order to be able to fulfill the obligations of § 1322(b)(5), a debtor and the trustee have to be informed of the exact amount needed to cure any prepetition arrearage, see Rule 3001(c)(2), and the amount of the postpetition payment obligations.  If the latter amount changes over time, due to the adjustment of the interest rate, escrow account adjustments, or the assessment of fees, expenses, or other charges, notice of any change in payment amount needs to be conveyed to the debtor and trustee.  Timely notice of these changes will permit the debtor or trustee to challenge the validity of any such charges, if appropriate, and to adjust postpetition mortgage payments to cover any undisputed claimed adjustment.

2. The Debtor is deemed current, as of the end of July 2018, on all mortgage obligations owed to Wells Fargo. Any delinquency in mortgage obligations that arose during this chapter 13 case is unenforceable against the Debtor.

3. Not later than 30 days after entry of this order, Wells Fargo shall provide the Debtor with the amount of current monthly mortgage payments and shall provide the Debtor with a valid mailing address for the Debtor to send said monthly payments. At the same time, Wells Fargo shall re-start sending the Debtor regular monthly statements.

###

Copy to:

Nadine V. White-Boyd, Esq.

*Nadine V. White-Boyd, Esq. shall serve a copy of this order on all appropriate parties in interest and file a certificate of service with the Court.*