

**ORDERED in the Southern District of Florida on August 1, 2019.**

Erik P. Kimball, Judge
United States Bankruptcy Court

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                          Case No. 13-25698-EPK

**CORALEE EDWARDS,**                                            Chapter 13

    Debtor.
_____/

### ORDER DENYING MOTION TO RECONSIDER ORDER
### GRANTING MOTION TO DEEM CURRENT SECURED OBLIGATION

This matter came before the Court for hearing on June 27, 2019 upon the *Amended Motion to Reconsider Amended Order Granting Motion to Deem Current Secured Obligation* [ECF No. 180] (the "Motion to Reconsider"), wherein Wells Fargo Bank, N.A. ("Wells Fargo"), a creditor with a claim secured by a mortgage on the principal residence of Coralee Edwards (the "Debtor"), seeks reconsideration of this Court's *Amended Order Granting Motion to Deem Current Secured Obligation* [ECF No. 174] (the "Order").

### Facts

In July 2013, with the assistance of counsel, the Debtor filed a voluntary chapter 13 petition.

Wells Fargo timely filed proof of claim number 7-2 in the total amount of $132,331.91. The claim is secured by a mortgage on the Debtor's principal residence. Wells Fargo's proof of claim reflects prepetition arrearages in the amount of $15,846.30 and ongoing mortgage payments in the amount of $1,045.03 per month. The Debtor did not file an objection to Wells Fargo's claim. As detailed below, the Debtor treated the claim through a confirmed chapter 13 plan.

In July 2018, after five years without missing a plan payment, the Debtor satisfied all conditions of the confirmed plan. There is no dispute that the Debtor paid all prepetition arrearages owed to Wells Fargo. ECF Nos. 132 and 144. However, the Debtor and Wells Fargo dispute whether the Debtor is current with post-petition mortgage payments consistent with section[1] 1322(b)(5).

Prior to confirming a plan, the Debtor attempted to modify Wells Fargo's secured claim through the Court's mortgage modification mediation process. ECF Nos. 18 and 20. The Debtor's initial plan through the Debtor's fifth amended plan provided for adequate protection payments to Wells Fargo in the amount of $500.00 per month. ECF Nos. 11, 26, 37, 43, 62, and 74. In April 2014, nine months into the case, the Debtor and Wells Fargo failed to reach an agreement through the mortgage modification mediation. ECF No. 67.

In July 2014, the Debtor filed a sixth amended plan, electing for the first time to cure the prepetition arrearage owed to Wells Fargo and to maintain post-petition mortgage payments consistent with the original documents. ECF No. 80. The Debtor then filed a series of amended plans with the same treatment for Wells Fargo. ECF Nos. 85, 88, and 91.

In September 2014, the Debtor filed a tenth amended plan [ECF No. 91] (the "10AP"). The 10AP provided for cure of the prepetition arrearage and for post-petition mortgage

---

[1] Unless otherwise noted, the word section or sections refers to the stated section or sections of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

payments to Wells Fargo in the amount of $500.00 for months 1 through 12 (to reflect the Debtor's previously paid adequate protection payments) and $1,181.29 for months 13 through 60, for a total amount of $62,701.92 in post-petition mortgage payments during the period covered by the 10AP.

The monthly mortgage payment reflected for months 13 through 60 of the 10AP is $1,181.29, or $136.26 higher than the monthly mortgage payment reflected in Wells Fargo's proof of claim. Because, in the end, the Debtor determined to cure and maintain Wells Fargo's mortgage loan, which then had a monthly payment of $1,045.03, but the Debtor had paid only $500.00 each month towards Wells Fargo's loan during the first 12 months of the plan, the Debtor needed to make up the resulting shortfall over the remaining 48 payments. The sum of $12,540.36 was due during the first 12 months of the plan ($1,045.03 x 12), but the Debtor had paid only $6,000.00 ($500.00 x 12), leaving a shortfall of $6,540.36. Dividing this shortfall by the remaining 48 months in the plan results in an extra $136.26 to be added to each monthly payment, hence the monthly payment of $1,181.29 in the 10AP. In other words, the 10AP appropriately addressed the payment shortfall resulting from the Debtor's failed attempt to negotiate a loan modification during the first 12 months of the plan, when the Debtor was making only $500.00 adequate protection payments each month.

Wells Fargo received notice of the 10AP and the hearing thereon, and did not object to its confirmation. After a hearing, on September 29, 2014, the Court confirmed the Debtor's 10AP. ECF No. 94.

Soon after confirmation of the 10AP, Wells Fargo filed its first notice of payment change pursuant to Fed. R. Bankr. P. 3002.1. This rule provides a method for a mortgage lender to present periodic changes in loan payments resulting from adjustments in the interest rate on a variable rate mortgage or from changes in required monthly escrows for taxes and insurance. The notice indicated that, effective November 15, 2014, the Debtor's

monthly mortgage payment would decrease to $1,034.68. It is important to note that this does not mean that future payments to Wells Fargo under the 10AP should have been adjusted to the same amount, as it would still be necessary to add $136.26 to each payment to make up for the shortfall from the first 12 months. At that time, although it would have been appropriate for the Debtor to propose a modification to the 10AP to lower the payment to Wells Fargo to $1,170.94 ($1,034.68 + $136.26), the Debtor did not seek such a modification.

In April 2015, the Debtor filed a motion to modify the 10AP. ECF No. 107. In that motion, the Debtor proposed to adjust only the treatment of a claim held by another secured creditor. The motion to modify incorporated a new plan filed at ECF No. 106. Wells Fargo received copies of these documents and the notice of hearing on the motion to modify.

The form of first modified plan filed at ECF No. 106 in tandem with the motion to modify included changes to the treatment of Wells Fargo's claim not identified in the motion to modify. There is no rhyme or reason to the payment provisions for Wells Fargo set out in the form of first modified plan. The parties agree that these payment provisions were simply a typographical mistake by the Debtor's prior counsel. The aggregate of regular mortgage payments set out in the first modified plan was $62,699.86, just $2.06 shy of the $62,701.92 provided for under the previously confirmed 10AP. In other words, even if Wells Fargo had looked beyond the text of the motion to modify, it would have discovered a revised plan providing for essentially the same aggregate of payments during the life of the plan. Indeed, taking into account Wells Fargo's first notice of mortgage payment change, the aggregate of regular monthly payments under the first modified plan would have exceeded the actual amount due.

The Debtor filed four additional modified plans in connection with the motion to modify, each of which provided the same treatment for Wells Fargo as the first modified plan

filed along with the motion to modify. ECF Nos. 106, 110, 111, 112, and 113. Wells Fargo received notice of each of these modified plans.

In early July 2015, the Court held a hearing on the motion to modify. Wells Fargo received notice of that hearing but did not attend. Immediately after the hearing, the Debtor filed a sixth modified plan [ECF No. 114] (the "6MP"). Inexplicably, the 6MP provided yet a different treatment for Wells Fargo compared with both the confirmed 10AP and the five modified plans previously filed under the motion to modify. Again, there is no reason for the change in the ongoing monthly payment amounts provided for Wells Fargo, and the parties agree that the payment amounts for Wells Fargo in the 6MP represent an unintended drafting error by the Debtor's prior counsel. Unfortunately, the 6MP presents regular payments to Wells Fargo aggregating only $57,268.50, or $5,433.42 less than the total amount presented in the 10AP. Even if the slight reduction in contractual monthly payments reflected in Wells Fargo's first notice of mortgage payment change is taken into account, the 6MP presents treatment of Wells Fargo's claim that is facially insufficient to cause the Debtor to be current on the loan at the end of the plan. In other words, a cursory review of the 6MP by Wells Fargo would have revealed that it merited objection. The 6MP was served on Wells Fargo but Wells Fargo took no action.

One might question how it is that a modified plan could be filed, after the hearing on a motion to modify, which contains terms not addressed in the motion itself, and that modified plan could be approved without another hearing. It is not unusual for the Court to hold a hearing on a motion to modify a plan during which the Court requires, or the parties agree to, changes that impact only parties present at the hearing. If the only affected parties are present at the hearing, and the modified plan filed after the hearing is consistent with the outcome of the hearing, there is no need for an additional hearing. In such circumstances, the Court will direct the debtor to file a further modified plan which is then subject to

approval. But, in this case, neither the chapter 13 trustee nor the Court realized that the 6MP included changes to the treatment of Wells Fargo's claim that were not addressed in the motion to modify or otherwise discussed at the hearing.

On July 20, 2015, the Court granted the Debtor's motion to modify and confirmed the 6MP. ECF No. 115. There is no dispute that Wells Fargo received notice of the 6MP as well as the Court's order granting the Debtor's motion to modify and explicitly confirming the 6MP. At no time did Wells Fargo object or seek reconsideration. Wells Fargo did not appeal the Court's order confirming the 6MP.

On July 5, 2018, nearly four years after the Court confirmed the 6MP, the chapter 13 trustee filed the notice of plan completion and notice of final cure payment. ECF Nos. 131 and 132. Wells Fargo filed an objection to the trustee's notice of final cure payment, stating that the Debtor is not current on post-petition mortgage payments consistent with section 1322(b)(5). ECF No. 144. In that objection, Wells Fargo asserts that, as of March 15, 2018, the Debtor was delinquent $4,810.37 on post-petition mortgage payments. Wells Fargo provided a tabulation of the alleged delinquency. The Court has substantial experience in reviewing such tabulations but was unable to make sense of it. Nevertheless, the Debtor does not dispute Wells Fargo's calculation of the shortfall. The Debtor disputes whether she should be required to pay the shortfall in light of the fact that she has made all payments required under her confirmed plan as modified.

On August 1, 2018, the Debtor received a discharge. ECF No. 147.

Since approval of the 6MP, Wells Fargo filed four notices of payment change. On September 2, 2015, Wells Fargo's notice indicated that effective November 15, 2015 the Debtor's monthly mortgage payment would decrease to $1,033.26. On February 10, 2016, Wells Fargo's notice indicated that effective March 15, 2016 the Debtor's monthly mortgage payment would decrease to $1,017.80. On February 20, 2017, Wells Fargo's notice indicated

that effective March 15, 2017 the Debtor's monthly mortgage payment would decrease to $986.17. Finally, on February 7, 2018, Wells Fargo's notice indicated that effective March 15, 2018, the Debtor's monthly mortgage payment would increase to $1,025.74. All of these mortgage payment amounts are less than the monthly payment reflected in Wells Fargo's original proof of claim, but of course do not reflect the shortfall created by the Debtor making payments of only $500.00 during the first 12 months of the plan. Although the tabulation of the shortfall provided by Wells Fargo is in general inscrutable, it appears that Wells Fargo did take into account these changes in the monthly payment. In the end, again, this does not matter as the Debtor does not take issue with Wells Fargo's calculation of the deficiency, only whether the law requires her to pay it.

In response to Wells Fargo's objection to the trustee's notice of final cure payment, the Debtor filed a motion requesting the Court to deem current the Debtor's post-petition mortgage obligations due to Wells Fargo as of July 2018, the month in which the chapter 13 trustee made the final payment under the 6MP. ECF No. 139. The Debtor argued that Wells Fargo received notice of the 6MP and the Court's order granting the motion to modify and confirming the 6MP. Because Wells Fargo failed to object to approval of the 6MP, seek reconsideration, or appeal the Court's order confirming the 6MP, the Debtor argued that the 6MP is *res judicata* and that Wells Fargo is bound by the terms of the 6MP. The Debtor relied on section 1327(a) and the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010).

In response, Wells Fargo argued that the Debtor is not current with post-petition mortgage obligations consistent with section 1322(b)(5) and asked the Court to order that the post-petition delinquency of $4,810.37 is valid and enforceable against the Debtor. Wells Fargo argued that the 6MP violates section 1322(b)(2) by modifying its allowed claim secured by a mortgage on the Debtor's principal residence. Wells Fargo relied on *Universal Am. Mort.*

*Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003), a decision which predates the Supreme Court's opinion in *Espinosa*.

The Court set the Debtor's motion to deem current for hearing on February 11, 2019. Before the February 11, 2019 hearing, counsel who represented the Debtor through every step of this chapter 13 case, from filing the voluntary petition through confirmation of the 6MP and the filing of the motion to deem current, filed a motion to withdraw based on irreconcilable differences. The Court set the motion to withdraw for hearing on February 11, 2019, to be heard along with the Debtor's motion to deem current. Because the Debtor appeared at the February 11, 2019 hearing with new counsel, the Court permitted former counsel to withdraw, ECF No. 169, and new counsel to argue the motion to deem current.

## The Court Granted the Debtor's Motion to Deem Current Secured Obligation

On May 22, 2019, the Court entered the Order, granting the Debtor's motion to deem current. In the Order, the Court explained that the Supreme Court's decision in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), holding that a confirmed chapter 13 plan is binding on all parties in interest with adequate notice, even if the plan violates the Bankruptcy Code and/or the Bankruptcy Rules, displaced the Eleventh Circuit's earlier decision in *Universal Am. Mort. Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir. 2003), which held that the anti-modification provision of section 1322(b)(2) prevails over the binding effect of a confirmed plan under section 1327(a)). This Court ruled that "[p]ursuant to section 1327(a) and consistent with *Espinosa*, Wells Fargo is bound by the terms of the 6MP, even though the 6MP violates the anti-modification provision of section 1322(b)(2)." Accordingly, the Court ruled that the Debtor is deemed current, as of the end of July 2018, on all mortgage obligations owed to Wells Fargo and that any delinquency in mortgage obligations that arose during the chapter 13 case is unenforceable against the Debtor.

**Wells Fargo's Motion to Reconsider**

In the Motion to Reconsider, Wells Fargo does not cite any rule or legal standard in support of its request. The only rules that may be applicable are Fed. R. Civ. P. 59(e), made applicable to this case by Fed. R. Bankr. P. 9023, or Fed. R. Civ. P. 60(b), made applicable to this case by Fed. R. Bankr. P. 9024.

In the Motion to Reconsider, Wells Fargo makes arguments that could have been, but were not, presented prior to the Court's entry of the Order. Neither Fed. R. Civ. P. 59(e) nor Fed. R. Civ. P. 60(b) permit a party to raise arguments that could have previously been raised before a court enters relief. *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 957 (11th Cir. 2009) ("A motion for reconsideration cannot be used to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment."). The Motion to Reconsider must be denied for this reason alone.

In the Motion to Reconsider, Wells Fargo argues that, in spite of the Supreme Court's ruling in *Espinosa*, the Court remains bound by the Eleventh Circuit's prior ruling in *Bateman*. Wells Fargo argues that the Eleventh Circuit's "prior panel precedent" rule requires this outcome.

The prior panel precedent rule is a procedural rule of the Eleventh Circuit designed to minimize the possibility that two or more panels of that court issue decisions directly at odds with each other. If a panel of the Eleventh Circuit has previously ruled on an issue, a later panel is bound to follow the prior decision, subject of course to *en banc* review. But the rule has its limits. As the Eleventh Circuit has stated, "[a] panel . . . may decline to follow a decision of a prior panel if such action is necessary in order to give full effect to an intervening decision of the Supreme Court of the United States." *Lufkin v. McCallum*, 956 F.2d 1104, 1107 (11th Cir. 1992), *cert. denied*, 506 U.S. 917 (1992); *also In re Provenzano*, 215 F.3d 1233, 1235 (2000) ("We would, of course, not only be authorized but also required to depart from [a

prior panel precedent] if an intervening Supreme Court decision actually overruled or conflicted with it."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1485 (11th Cir. 1996) ("Where prior panel precedent conflicts with a subsequent Supreme Court decision, we follow the Supreme Court decision.").

As this Court discussed in the Order, in *Bateman* the Eleventh Circuit ruled that, in spite of a confirmed chapter 13 plan which otherwise had *res judicata* effect, the confirmed plan could not modify a mortgage secured solely by the debtor's principal residence in violation of section 1322(b)(2). In other words, the Eleventh Circuit ruled that the anti-modification provision of section 1322(b)(2) takes precedence over the binding effect of a confirmation order under section 1327(a). *Bateman*, 331 F.3d at 829-34. More recently, the Supreme Court ruled in *Espinosa* that a creditor with adequate notice cannot collaterally attack a confirmed plan and that the confirmed plan prevails even if it violates an explicit provision of the Bankruptcy Code. It does not matter that the substantive provision at issue in *Espinosa* was different from the substantive provision addressed in *Bateman* and in this case. This Court cannot ignore the broad holding of *Espinosa*. To rule otherwise would be the equivalent of saying that the Eleventh Circuit must address each and every possible application of the rule in *Espinosa* before any trial court is bound by its holding, except where the exact substantive provision in *Espinosa* is at issue. As the Eleventh Circuit's own opinions demonstrate, the prior panel precedent rule does not require such an absurd result.[2]

The Supreme Court's ruling in *Espinosa* depends on the finding that the creditor in question received notice sufficient to constitute due process under the United States

---

[2] Indeed, it is not clear that the prior panel precedent rule applies to the trial courts. In its own decisions, the Eleventh Circuit describes the prior panel precedent rule as applying to panels of the Eleventh Circuit itself. This Court has been unable to find an Eleventh Circuit decision specifically stating that, when presented with conflicting panel decisions, or an Eleventh Circuit decision at odds with a later Supreme Court opinion, trial courts are bound by the prior panel precedent rule. In such circumstances, the trial courts use a variety of methods to determine the correct rule.

Constitution. *Espinosa*, 559 U.S. at 275. In the Motion to Reconsider, Wells Fargo argues that it was not provided adequate notice of the change in treatment of its claim. Wells Fargo points out that the Debtor's motion to modify did not propose to modify the treatment of Wells Fargo's claim and that the 6MP was not filed until after the hearing on the motion to modify. Under these circumstances, Wells Fargo argues that it did not receive constitutional due process.[3]

The 6MP consists of only 1.5 pages of text. ECF No. 114. It presents the treatment for Wells Fargo's secured claim in unambiguous terms set out in a separate box in the middle of the first page. In the first paragraph on the first page, the order approving modification of the plan specifically states that the 6MP "complies with the provisions of 11 U.S.C. Section 1325 and is confirmed." ECF No. 115. There is no dispute that Wells Fargo received the 6MP and the Court's order confirming the 6MP nearly 4 years ago. Wells Fargo argues that the text of the motion to modify did not draw its attention to the changes to treatment of its claim later memorialized in the 6MP, and that this somehow relieved Wells Fargo of the burden of reviewing the 6MP and the order confirming it. But the change in treatment of Wells Fargo's secured claim was conspicuously presented in the documents duly served on Wells Fargo. That Wells Fargo apparently did not review those documents does not make them any less immune from collateral attack. Wells Fargo did not seek reconsideration of the confirmation order or appeal it. Indeed, for nearly four years, Wells Fargo received monthly payments from the chapter 13 trustee that did not match the sum set out in the 10AP, even if one takes into account the small payment changes reflected in Wells Fargo's several notices of payment change. Wells Fargo accepted and credited all of those payments

---

[3] Wells Fargo also relies on *In re Hill*, 572 B.R. 793 (Bankr. N.D. Ga. 2017), which addresses interpretation of an ambiguity in a confirmed chapter 13 plan. As the Court explained in the Order, *In re Hill* is neither binding on this Court nor applicable here as there is nothing ambiguous about the treatment of Wells Fargo's claim under the 6MP.

without contacting the debtor's counsel or the chapter 13 trustee or, more importantly, timely bringing the concern before the Court.  Under the circumstances, the Court finds that Wells Fargo was "provided with notice reasonably calculated under all the circumstances to apprise [Wells Fargo] that its status as a secured creditor was being challenged." *Nationstar Mortg., LLC v. Iliceto (In re Iliceto)*, 706 Fed. Appx. 636, 642 (11th Cir. 2017) (applying *Espinosa* in in the claims objection context and explaining that "*Espinosa* controls our decision").

It is undisputed that the change in treatment of Wells Fargo's secured claim in the 6MP was not intentional.  One might question, if the payment amounts received by Wells Fargo for four years were so obviously not consistent with what they should have expected, whether the Debtor should also have realized that her plan payments were not correct.  But the 6MP reflects significant changes in the payments to another secured creditor, causing the Debtor's monthly payment to the chapter 13 trustee to increase by more than 10%.  The Debtor had no reason to believe that her monthly plan payments were not sufficient to cover the regular monthly payment to Wells Fargo.  The Debtor had no reason to believe she was not current with Wells Fargo until Wells Fargo raised the concern after she had made every payment under her plan.  The Court need not address here whether the outcome of this case would be different if the Debtor had been aware of the windfall or, worse, had acted intentionally.

Wells Fargo next focuses on the impact of Bankruptcy Rule 3002.1.  Regular monthly amounts due on residential mortgages may change over time.  Many residential mortgage payments include escrowed funds for real estate taxes and property insurance, which can fluctuate.  Some residential mortgage loans have variable interest rates and so the regular payment amounts may change.  Chapter 13 plans cannot easily reflect the potential ebb and flow in residential mortgage payments.  Bankruptcy Rule 3002.1 addresses these concerns, avoiding the need to modify a confirmed chapter 13 plan multiple times during its term,

which would greatly burden the bankruptcy courts and result in unnecessary legal expense for debtors and creditors alike.

Bankruptcy Rule 3002.1 applies only to claims secured solely by a debtor's principal residence, whether the payments are made through the chapter 13 trustee or directly to the holder of the mortgage claim. Fed. R. Bankr. P. 3002.1(a). The holder of such a mortgage loan is required to file and serve a notice of any payment change no later than 21 days before the date it is to take effect. If no objection is filed prior to the effective date of the payment change, "the change goes into effect, unless the court orders otherwise." Fed. R. Bankr. P. 3002.1(b). Note that this does not result in automatic modification of a confirmed chapter 13 plan, which is governed section 1329 of the Bankruptcy Code. If monthly mortgage payments are being made through the chapter 13 trustee rather than directly to the holder of the mortgage claim, as in this case, the payments made to the trustee may differ from the actual monthly payment due as a result of the notice of payment change. As discussed below, the rule provides a method for adjudicating any dispute arising from the resulting shortfall or surplus.

Within 30 days after the debtor completes all plan payments, the chapter 13 trustee is required to file "a notice stating that the debtor has paid in full the amount required to cure any default on the [mortgage] claim." Fed. R. Bankr. P. 3002.1(f). This component of Bankruptcy Rule 3002.1 addresses only the cure of pre-bankruptcy defaults, not the payment of post-petition mortgage payments. In this case, there is no dispute that Wells Fargo's pre-petition arrears were paid in full.

Within 21 days after service of the trustee's notice, the holder of the mortgage claim may file an objection. Fed. R. Bankr. P. 3012.1(g). The holder can raise two categories of objections. First, the holder may challenge whether its pre-petition deficiency was cured. Again, in this case, there is no dispute that it was. Second, the holder may address "whether

the debtor is otherwise current on all payments consistent with §1322(b)(5) of the Code." *Id*. If the holder so objects, it must include an itemized statement showing the amounts that it claims have not been paid. *Id*. Then, on motion of the debtor or the holder, the Court may determine whether the debtor is current. Fed. R. Bankr. P. 3002.1(h).

In this case, the parties followed the procedure set out in Bankruptcy Rule 3002.1. The chapter 13 trustee filed a notice of final cure payment. ECF No. 132. Wells Fargo objected. ECF No. 144. The Debtor filed a motion seeking a ruling on that objection. ECF No. 139. And the Court entered an order ruling that the Debtor was current, which is the Order under reconsideration here. ECF No. 174.

Wells Fargo argues that Bankruptcy Rule 3002.1 gives it an opportunity to complain that the payments set out in the 6MP, confirmed by an order of this Court four years ago, were not correct, and that the Court may now rule, in effect, that the 6MP should not have been confirmed. There are two reasons why this argument fails.

First, Bankruptcy Rule 3002.1 itself does not support Wells Fargo's argument. Bankruptcy Rule 3002.1(h) permits the Court to determine whether a debtor has "paid all required postpetition amounts" in order to resolve disputes arising from application of that same rule. If the holder of a mortgage claim has filed notices of payment change consistent with subsection (b), the effective monthly payment may differ from that paid to the chapter 13 trustee under a confirmed plan, resulting in a surplus or a shortfall. If the mortgage payment is being made direct to the holder of the mortgage claim, only the debtor and the holder will know whether payments made comply with any notices of payment change. Subsections (g) and (h) provide a procedure to address such disputes in a binding way for the benefit of the parties. The dispute resolution provisions of Bankruptcy Rule 3002.1 encompass only those differences arising from the notices of payment change permitted by that rule. Nothing in Bankruptcy Rule 3002.1 suggests that its application results in

modification of a confirmed plan. Indeed, section 1329 of the Bankruptcy Code provides the exclusive method for modification of a chapter 13 plan after confirmation.

Second, and perhaps more importantly, nothing in the Bankruptcy Code or applicable law suggests that a creditor may collaterally attack a confirmation order, otherwise final and no longer subject to appeal, by the procedure provided in Bankruptcy Rule 3002.1. As both the Eleventh Circuit and the Supreme Court have stated, a creditor cannot collaterally attack a confirmed chapter 13 plan when the creditor failed to object to the plan or appeal its confirmation. *Espinosa*, 559 U.S. at 275; *Bateman*, 331 F.3d at 822. Bankruptcy Rule 3002.1 does not provide an end run around the finality of confirmation orders.

For the forgoing reasons, the Court ORDERS and ADJUDGES that the Motion to Reconsider [ECF No. 180] is DENIED.

###

Copy to:

Jeffrey S. Fraser, Esq.

*Jeffrey S. Fraser, Esq. shall serve a copy of this order on all appropriate parties and shall file a certificate of service with the Court.*